IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.            No. 12 CR 2051 MV

GEORGE H. BEAMON, JR.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion to Suppress Evidence and corresponding Memorandum in Support of Motion to Suppress Evidence (Docs. 23 & 24). The Court held a hearing on the motion on February 8, 2013. The Court has considered the motion, briefs, the parties' arguments, and the relevant law, and being otherwise fully informed, **FINDS** that the motion shall be **DENIED** for the reasons stated herein.

### BACKGROUND

**I.**    **Undisputed Facts**

On July 31, 2012, DEA Agent Kevin Small and Albuquerque Police Department Task Force Officer (TFO) Jeannette Tate encountered Defendant George H. Beamon, Jr. on an Amtrak train in Albuquerque. Defendant was traveling with another person, James Horskins. The officers approached the two men after learning they had purchased one-way tickets from San Bernardino, California to Kansas City, Missouri. The officers knew that the Amtrak Station in San Bernardino is an unmanned station with no security, and in Agent Small's experience, drug traffickers often depart from such stations so as to avoid the presence of police.

1

Defendant, who was seated on the train, agreed to speak to TFO Tate. TFO Tate asked if Defendant had any contraband, to which he responded in the negative. He then opened his backpack but left it on the seat next to him. TFO Tate asked for permission to search the backpack, and Defendant refused.

TFO Tate asked that Defendant not reach into his bag for officer safety reasons, as she was concerned it might contain a weapon. Nonetheless, Defendant removed a plastic bag from the backpack and placed it on his seat. TFO Tate again asked him not to reach into the backpack, and again requested consent to search.[1] At this time, Defendant picked up the backpack and began to walk away. TFO Tate attempted to stop him, at which point Agent Small approached. Defendant and Agent Small made physical contact, and the parties dispute who initiated the contact. Both men fell down the stairwell of the train, at which point Agent Small discovered that Defendant's backpack strap was wrapped around the agent's leg. Defendant grabbed an object out of the backpack – which Agent Small immediately recognized as a heat-sealed envelope commonly used for controlled substances – and attempted to flee. Agent Small drew his weapon and ordered Defendant to the ground, and Defendant complied. The officers arrested him, and found the vacuum-sealed package of cocaine on his person. After the arrest, agents found an airline ticket, airline luggage tag and claim check in Defendant's property.

## II.     Resolution of Factual Disputes

In addition to the undisputed facts summarized above, the Court considered conflicting testimony from the officers and Defendant. The primary factual dispute concerns the brief time period when Defendant and Agent Small encountered each other on the train. Whereas Agent Small testified that he approached Defendant and told him not to go anywhere, but did not touch

---

[1] According to the recording from TFO Tate's belt tape, she asked for permission to search a total of seven times over the course of roughly a minute, before Defendant finally responded in the negative.

2

him, Defendant testified that the agent grabbed him.  Agent Small testified that it was Defendant who initiated physical contact, pushing the agent into a cardboard trash can, and then throwing him down the stairwell of the train.  Defendant does not admit to pushing or throwing Agent Small, but he does admit that a struggle ensued between the two men, and they fell down the stairs.  Defendant further admits that after he fell down the stairs, he removed the cocaine from his backpack and began to run down the train platform, but yielded when Agent Small threatened to shoot him.

A less crucial factual dispute involves the precise locations of Defendant and Agent Small after they toppled off the train.  Agent Small testified that they fell off the train together and landed on the platform so close to each other that they were physically touching.  He noticed that the strap of Defendant's backpack was wrapped around the agent's leg, and he told Defendant, "you're not going anywhere, my leg is caught in that thing."  Tr. of Proceedings at 30:19-20.[2]  In response, Defendant reached into the backpack, removed the vacuum-sealed envelope, and ran.  In contrast to Agent Small's version of the events, Defendant testified that he and Agent Small engaged in some sort of "scuffling," *id*. at 88:23, after which Defendant fell down the stairs.  He was unsure as to where Agent Small was, but believed he was still at the top of the stairs.  Defendant then backtracked somewhat, and explained that the train has two levels of stairs, arranged in a "round-about."  *Id*. at 90:24 & 91:20.  Agent Small was at the top of the first level of stairs, and Defendant's backpack strap was wrapped around the agent's leg.  Defendant claimed that from his position on the train platform, he reached up the flight of "maybe three" stairs, *id*. at 92:20, retrieved the cocaine from his backpack, and ran down the train platform.

---

[2] This Memorandum Opinion and Order cites to the court reporter's unofficial transcript.  All line and page citations are subject to change on the official transcript.

As the Court will explain in further detail in Section I, "Agent Small Did Not Seize Defendant on the Train," *infra*, it is not necessary to resolve the factual dispute over whether or not Agent Small touched Defendant on the train. For purposes of resolving the instant motion, the Court will assume without deciding that Agent Small grabbed Defendant in the aisle of the train. With respect to the second factual dispute about whether Agent Small was on the train platform side-by-side with Defendant, or one level of stairs above him, the Court did not find Defendant's version of the events to be credible. His tone during his testimony was unsure, and he failed to persuade the Court that he somehow swiftly reached up three stairs to remove the cocaine from his backpack. Accordingly, the Court adopts Agent Small's version of the events.

Even assuming the agent touched Defendant in the train aisle, this physical contact was brief: the two men fell down the train stairwell onto the train platform, Agent Small instructed Defendant not to go anywhere, and Defendant removed a bag of narcotics from his backpack and fled. The fact that Defendant fled – which demonstrates that Agent Small had not restrained his freedom of movement at that point – is not in dispute. He did not heed the agent's command to stop until he was twenty-five to thirty yards away from him.

## APPLICABLE LAW

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. CONST. AMEND. IV. For purposes of analyzing Fourth Amendment seizures, the Tenth Circuit has divided police-citizen interactions into three categories: (1) consensual encounters; (2) investigative detentions; and (3) arrests. *See, e.g.*, *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). An encounter between an individual and a police officer is consensual so long as a reasonable person would feel free to terminate the encounter. *Id.* As

such encounters generally do not fall within the Fourth Amendment's definition of a seizure, they "need not be supported by suspicion of criminal wrongdoing." *Id*.

In contrast to a consensual encounter, an investigative detention is a seizure within the meaning of the Fourth Amendment. To support an investigative stop, "a law enforcement officer, based on the totality of the circumstances, must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Jones*, 701 F.3d 1300, 1312 (10th Cir. 2012) (quotation omitted). The investigative detention that follows the stop must be reasonably related in scope to the circumstances which justified the stop in the first place, as the Fourth Amendment imposes "limitations on both the length of the detention and the manner in which it is carried out." *United States v. Holt*, 264 F.3d 1215, 1229 (10th Cir. 2001) (en banc).

Finally, an arrest is a seizure that is "characterized by highly intrusive or lengthy search or detention." *Oliver*, 209 F.3d at 1186. The general rule is that "the use of firearms, handcuffs, and other forceful techniques" is sufficiently intrusive to signal that a person has been placed under arrest. *United States v. Melendez–Garcia*, 28 F.3d 1046, 1052–53 (10th Cir. 1994). An arrest must be supported by probable cause, which "exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested." *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011). The Government bears the burden of proving that Defendant's arrest was reasonable under the Fourth Amendment. *United States v. Chavez*, 534 F.3d 1338, 1343 (10th Cir. 2008).

**DISCUSSION**

Defendant argues that the actions of TFO Tate and Agent Small amounted to a warrantless seizure that was unsupported by reasonable suspicion of wrongdoing. He argues that when he picked up his backpack and walked away, he was simply terminating a consensual encounter, and in turn the agents seized him. He states that Agent Small "reached out to grab" him and "blocked [him] from attempting to go any further," which amounted to a seizure. Doc. 23 at 4. As the unlawful seizure culminated in an unlawful arrest, Defendant argues, all evidence must be suppressed as fruit of the poisonous tree.

The Government agrees that the initial encounter between Defendant and TFO Tate was consensual. However, the Government argues that Agent Small did have reasonable suspicion to detain Defendant at the time he stopped him in the aisle of the train. Regardless, the Government goes on to argue that Agent Small did not, in fact, effect a seizure upon Defendant at that point. Rather, he *attempted* to seize him, but Defendant assaulted the agent, and the two men toppled off the train. As a matter of law, argues the Government, no seizure occurred, and Defendant's claim that he was unlawfully seized fails.

**I.     Agent Small Did Not Seize Defendant on the Train**

Even assuming that Agent Small made physical contact with Defendant in the aisle of the train, the Court agrees with the Government that this did not constitute a seizure, because the agent's attempt to restrain Defendant's movement was unsuccessful. Accordingly, it is not necessary to resolve whether or not the officers' testimony established facts that would support a finding of reasonable suspicion to conduct an investigative stop in the aisle of the train.

An officer's "show of authority" will amount to a seizure as defined under the Fourth Amendment only if the suspect yields to the officer. *California v. Hodari D.*, 499 U.S. 621, 626

(1991). In other words, a seizure occurs "only when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989); *see also United States v. Mendenhall*, 446 U.S. 544, 553 (1980) ("a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained."). Notwithstanding this Supreme Court authority, Defendant relies heavily on *Hodari D.* to support his argument that even an unsuccessful attempt to restrain a suspect, if it involves some physical touching on the officer's part, amounts to a seizure. *See* Doc. 28 at 4 ("The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful" (quoting *Hodari D.*, 499 U.S. at 626)). The Government points to language in the same Supreme Court decision to support its argument that no seizure occurred because Defendant did not yield to Agent Small's attempts to stop him. Doc. 26 at 6.

When viewed in a vacuum, the portions of *Hodari D.* upon which the opposing parties rely appear to contradict each other. Indeed, the Tenth Circuit implicitly recognized in *Brooks v. Gaenzle*, 614 F.3d 1213, 1221 (10th Cir. 2010) that *Hodari D.* must be "read in context and its entirety" in order not to confuse its dicta with its holding. *Hodari D.* involved a juvenile who fled upon seeing a police car, and a chase ensued. 499 U.S. at 622-23. When he saw a police officer almost upon him, the juvenile threw away a bag that turned out to contain narcotics, and the officer then tackled him. *Id*. at 623. The state court held that the juvenile had been "seized" when he saw the officer running towards him, even though the officer did not exercise control over the juvenile's movements at that point. *Id*. The question before the Supreme Court was whether or not the state court correctly held that the juvenile was seized at that moment, notwithstanding the fact that he was in the midst of flight.

7

In analyzing whether the officer's "show of authority" constituted a seizure, the Supreme Court began with a recitation of common law principles, stating that "the word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." *Id*. at 626. However, this statement nearly immediately followed the Court's unambiguous pronouncement of its holding: "The narrow question before us is whether, with respect to a show of authority *as with respect to application of physical force*, a seizure occurs even though the subject does not yield. We hold that it does not." *Id*. (emphasis added).

Although a comparison of these two excerpts could lead to some confusion, it would be too far-reaching to read *Hodari D.* as standing for the proposition that every time an officer slightly touches an individual, the person has been seized. This is true particularly in light of the fact that just two years earlier, the Supreme Court held that someone is seized when their "freedom of movement [is terminated] through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989). Nowhere in *Hodari D.* did the Court state or even suggest that it was overruling *Brower*.

The Tenth Circuit's decision in *Brooks*, which dissects this apparent tension between *Hodari D.* and *Brower*, conclusively extinguishes Defendant's argument. There, the plaintiff was arrested after police officers discovered him allegedly burglarizing a home. 614 F.3d at 1215. As the suspected burglar was climbing a fence to escape the property, the officers shot and struck him. *Id*. Despite being shot, he continued to climb the fence and escaped. *Id*. He commenced a civil action pursuant to 42 U.S.C. § 1983, arguing that the shooting amounted to an unlawful seizure. The Tenth Circuit proceeded to hold that even though a bullet had hit the plaintiff, he was not seized within the meaning of the Fourth Amendment:

8

> A violation of the Fourth Amendment requires an intentional acquisition of physical control . . . . It is clear the gunfire which struck Mr. Brooks was intentional and intended to stop him, but he was not stopped by the very instrumentality set in motion for that purpose and, instead, he continued to flee and elude authorities . . . . Under the circumstances, we cannot say authorities gained intentional acquisition of physical control over Mr. Brooks.

*Brooks*, 614 F.3d at 1220.

Like Defendant, the plaintiff in *Brooks* relied on the Supreme Court's statement in *Hodari D.* that "laying on of hands or application of physical force to restrain movement," 499 U.S. at 626, constitutes a seizure, even when such physical contact is ultimately unsuccessful. Observing the tension between this language and the Court's ultimate holding, the Tenth Circuit explained that the *Hodari D.* Court had discussed and contrasted the common law definitions of "seizure" and "arrest" in the context of the "narrow question" before it. *Id*. at 1220. To take the Court's language out of context, as the plaintiff did in *Brooks*, was to ignore the fact that this portion of the Court's opinion amounted to no more than "common law dicta." *Id*. The Tenth Circuit noted the Supreme Court's observation that at common law, an arrest was defined "as the 'application of physical force with lawful authority, whether or not it succeeded in subduing the arrestee,' including 'the laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful.'" *Id*. (quoting *Hodari D.*, 499 U.S. at 624). However, reasoned the Tenth Circuit, the Supreme Court went on to explain:

> We have consulted the common-law to explain the meaning of seizure[,] and neither usage nor common-law tradition makes an attempted seizure a seizure. The common law may have made an attempted seizure unlawful in certain circumstances; but it made many things unlawful, very few of which were elevated to constitutional proscriptions.

*Id*. at 1221 (quoting *Hodari D.*, 499 U.S. at 626 n.2) (alterations omitted).

A comparison of *Hodari D.* and other Supreme Court cases addressing the definition of a seizure compels the conclusion the Tenth Circuit reached in *Brooks*: the language Defendant

9

relies upon is mere dicta that references common law principles, not constitutional ones. In *Brower*, decided just two years prior to *Hodari D.*, the Court held that "a Fourth Amendment seizure . . . [occurs] only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis in original). More recently, in *Brendlin v. California*, 551 U.S. 249, 254 (2007), the Court repeated its holding in *Brower* and clarified: "A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."

In *Brooks*, the Tenth Circuit reached the only conclusion possible from a reading of this Supreme Court authority. The court held that "some form of intentional acquisition of physical control, through termination of movement by physical force or submission to a show of authority, must occur in flight cases for a seizure to occur." *Brooks*, 614 F.3d at 1221. For this reason, the court held that a seizure had not occurred in *Brooks*, notwithstanding the fact that a police officer had struck the plaintiff with a bullet, because the gunshot did not stop the plaintiff from fleeing. If intentional use of deadly force that failed to stop the suspect's freedom of movement did not amount to a seizure in *Brooks*, then certainly Agent Small did not seize Defendant when he briefly touched him in the train aisle, as Defendant's subsequent flight demonstrates that his freedom of movement was not restrained.

**II.      Agent Small Had Probable Cause to Arrest Defendant on the Platform**

The parties agree that Agent Small's actions towards Defendant on the train platform – ordering him to stop running under threat of shooting him, and handcuffing him shortly after he

stopped – amounted to an arrest.  This arrest was reasonable under the Fourth Amendment because Agent Small had probable cause to suspect Defendant of a controlled substance offense.

Following their fall down the train stairwell, Agent Small warned Defendant, "you're not going anywhere," Tr. of Proceedings at 32:11, and Defendant in turn reached into his backpack.  Agent Small pointed his gun at Defendant, but Defendant did not appear to notice.  Instead, he retrieved an item from the backpack that Agent Small immediately recognized as a vacuum-sealed bag of narcotics.  Defendant then fled down the platform, and when he was roughly twenty-five to thirty yards away, Agent Small commanded him to stop.  In fact, Agent Small warned Defendant, "I'm going to cap you in the ass."  *Id*. at 33:5.  At this point, Defendant complied with the agent's order and dropped to his knees.  The officers handcuffed Defendant, who still had the vacuum-sealed envelope in his hands.

Agent Small testified that he has worked as an interdiction officer for the DEA since 1987.  Since then, he estimates he has worked 2,500 to 3,000 narcotics cases.  Due to his experience working in drug interdiction, Agent Small knew the vacuum-sealed envelope contained narcotics.  He stated that "in the drug world, that's how [drug traffickers] package the drugs," *id*. at 60:21-22, because they believe that vacuum-sealing prevents drug detection dogs from smelling the narcotics.  Agent Small also conceded that some passengers vacuum-seal their clothes and other items, presumably for the purpose of fitting more into a small suitcase.  However, he "know[s] in an instant," *id*. at 61:7, whether a vacuum-sealed bag contains narcotics.  In the instant case, he stated that in light of his years of experience in drug interdiction, he knew immediately that the envelope contained either cocaine or white heroin.

The Court found Agent Small to be a credible witness.  Although Defendant provided a slightly different set of facts regarding where precisely he and Agent Small were standing in

relationship to each other, he admitted that he reached into the backpack to retrieve the cocaine. *See id*. at 92:21-24 ("Q: So you reached . . . into the bag as it's wrapped around Agent Small's leg and you pull out the cocaine?  A: Yes.").  The Court finds it entirely believable that after twenty-five years of experience working as a DEA Agent in interdiction, Agent Small would immediately recognize a vacuum-sealed bag of narcotics for what it is.  Agent Small's observation of Defendant in possession of narcotics established probable cause to arrest him for a narcotics offense.  Accordingly, Defendant's arrest was reasonable under the Fourth Amendment, and suppression of evidence is not warranted.

## CONCLUSION

It is **HEREBY ORDERED** that Defendant's Motion to Suppress Evidence (Doc. 23) is **DENIED**.

Dated this 11th day of March, 2013.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

*Attorney for Plaintiff:*
Norman Cairns

*Attorney for Defendant:*
Todd B. Hotchkiss